IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUNG YONG LEE, | : | CIVIL ACTION NO. 3:18-CV-663 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| BOGDAN MARIEI and CAT EXPRESS INC., | : | |
| Defendants | : | |

## MEMORANDUM

Defendants Bogdan Mariei and CAT Express Inc. move the court to compel plaintiff Jung Yong Lee to consummate a settlement purportedly reached between the parties sometime in early 2020. For the reasons set forth below, the court will deny defendants' motion.

I.   **Background**[1]

Lee filed this lawsuit in the Court of Common Pleas of Luzerne County, Pennsylvania, on February 20, 2018. (See Doc. 1-2). Lee asserts negligence claims against both defendants arising from a motor-vehicle accident that occurred on July 14, 2016. (See id. ¶¶ 7-10, 18-30). On March 26, 2018, defendants timely removed the case to this court, where it was assigned to the late Judge A. Richard Caputo.

---

[1] The background that follows is derived from various filings of record as well as testimony provided during the evidentiary hearing convened on April 29, 2021. The court reporter has provided the court with a rough transcript of that hearing. Citations thereto are abbreviated "Hr'g Tr. __:__." Pagination of the rough draft may vary from pagination of the official transcript.

Defendants filed a notice of receivership on March 4, 2019, advising that defendants' insurer, Spirit Commercial Auto Risk Retention Group, Inc. ("Spirit"), had been placed in a permanent receivership. (Doc. 6). Following an initial case management conference on March 12, 2019, Judge Caputo stayed the case and directed counsel to file a status report in 90 days. (See Doc. 9). On June 12, 2019, defendants' counsel, James DeCinti, Esquire, filed a status report indicating that the receivership was still proceeding and that this litigation should remain stayed. (See Doc. 10 at 1-2). Attorney DeCinti also reported that, on or about May 30, 2019, he conveyed an offer to settle the matter for $10,000 with "personal money from the Defendant Driver and the Defendant Company" but that Lee's counsel, Robert W. Munley, III, Esquire, had not responded to the offer. (See id.) There was no further activity on the docket until December 12, 2019, when Attorney DeCinti filed notice that the receivership court had placed Spirit into liquidation. (See Doc. 11).

On March 23, 2020, the case was reassigned to the undersigned judicial officer following the passing of Judge Caputo. Three days later, Attorney DeCinti filed a notice of settlement with the court. The notice read:

> Please be advised that the parties have reached a settlement in this matter. We are just in the process of finalizing same. A release has been sent to Plaintiff's counsel and we are awaiting receipt of an executed copy to formalize settlement. We hope to have that completed soon.

(Doc. 12). Based on these representations, we entered our standard settlement order acknowledging the notice, administratively closing the case, and directing the parties to submit an appropriate Rule 41 dismissal filing. (See Doc. 13).

2

On July 31, 2020, having not received a Rule 41 filing or any other update concerning the settlement, we entered an order directing the parties to submit an appropriate Rule 41 dismissal filing within two weeks. (See Doc. 14). By letter of August 14, Attorney Munley advised: "Defendant has made a nominal offer to settle this case. Plaintiff has not rejected the offer but is still considering her options." (Doc. 15). Attorney Munley requested an additional 30 days "for [Lee] to make a determination on settlement," (id.), and the court granted that request, setting a new deadline of September 14, 2020, (see Doc. 16).

Attorney Munley filed a second letter on the September 14 deadline, requesting another 30 days for Lee to consider the settlement offer. (See Doc. 17). In a responsive letter filed the same day, Attorney DeCinti expressed disagreement with Attorney Munley's "characterization of the status of settlement of this matter." (Doc. 18 at 1). Attorney DeCinti stated he and Attorney Munley "had a telephone conversation on [February 3, 2020,] regarding the matter wherein [Attorney Munley] advised me that his client had accepted the $10,000 being offered in this matter." (Id.) Attorney DeCinti noted his view that "a settlement was achieved on February 3, 2020." (Id. at 2).

The court convened a telephonic status conference with counsel on September 23, 2020, to address the parties' dispute. Attorney Munley reported during the call that he believed the case could still settle, but was having difficulty getting in touch with his client. At counsel's request, we scheduled an in-person status conference for October 13, 2020, and directed Lee to appear at the conference to address the status of settlement. The in-person conference was later converted

3

to a telephonic conference with counsel only and continued to November 12, 2020, due to ongoing difficulties contacting Lee. During the November 12 call, Attorney Munley reported Lee had not signed and would not sign the release, and the court instructed Attorney DeCinti to file an appropriate motion if he believed a settlement had been reached.

Attorney DeCinti thereafter filed the instant motion to compel settlement. The parties fully briefed the motion, and the court convened an evidentiary hearing on April 29, 2021. During the evidentiary hearing, both attorneys testified to their respective recollections of the events leading up to Attorney DeCinti's filing of the notice of settlement with the court in March 2020. The record on this matter is now closed, and defendants' motion is ripe for disposition.

## II.     Legal Standard

Federal courts have inherent power to enforce and consider challenges to settlement agreements. Fox v. Consol. Rail Corp., 739 F.2d 929, 932 (3d Cir. 1984) (citation omitted). The standard for evaluating the validity of a settlement agreement is similar to the summary judgment standard. Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991). That is, treating the nonmovant's assertions as true, we must determine whether the moving party is entitled to enforcement of the agreement as a matter of law. Id. at 1031-32.

## III.    Discussion

Defendants seek to enforce a settlement agreement purportedly entered into with Lee, through her counsel, sometime in late January or early February

4

2020. Lee rejoins that, while defendants made an offer at that time, the offer was never accepted, so there is no settlement agreement to enforce.

A settlement agreement is a contract and is governed by principles of state contract law. See Pennsbury Vill. Assocs., LLC v. McIntyre, 11 A.3d 906, 914 (Pa. 2011) (quoting Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999)). Such agreements are valid and enforceable only if the parties have a meeting of the minds regarding material terms and subject matter. Mazzella, 739 A.2d at 536 (citing Onyx Oils & Resins, Inc. v. Moss, 80 A.2d 815, 817 (Pa. 1951)); see also Pennsbury Vill. Assocs., 11 A.3d at 914. Courts look to objective indicators to determine "whether both parties manifested an intention to be bound." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 582 (3d Cir. 2009) (citing ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998); Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

A party seeking to enforce a settlement agreement must prove the elements of a valid contract: offer, acceptance, and consideration. See Mazzella, 739 A.2d at 536; see also Mastroni-Mucker v. Allstate Ins. Co., 976 A.2d 510, 518 (Pa. Super. Ct. 2009) (quoting Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick, 587 A.2d 1346, 1349 (Pa. 1991)); Baribault v. Zoning Hearing Bd. of Haverford Twp., 236 A.3d 112, 118 (Pa. Commw. Ct. 2020) (same). There is no dispute in this case that an offer was made, and there is ostensibly no dispute that the $10,000 payment in exchange for the proposed release of claims constituted sufficient consideration.

5

The parties dispute only whether Attorney Munley accepted defendants' offer on Lee's behalf.[2]

The record establishes that defendants offered to settle the case for $10,000 as early as May 2019, shortly after Spirit entered into receivership. (See Doc. 10). After the receivership court placed Spirit into liquidation, the parties resumed settlement negotiations, with Attorney Munley writing to Attorney DeCinti in December 2019: "We had talked previously re: small settlement amount. I will contact you to discuss." (Doc. 27-2, Ex. A). Counsel agree that they spoke on the phone in late January 2020, but they hotly dispute what transpired during that call. Attorney DeCinti testified that counsel had a "discussion the results of which led me to believe" that Lee either "had accepted or would accept" the $10,000 settlement. (See Hr'g Tr. 4:13-16). For his part, Attorney Munley testified that Attorney DeCinti renewed the $10,000 settlement offer during the January 2020 phone call, to which Attorney Munley replied, "I'll bring it to my client." (Id. at 12:19-21). Attorney Munley stated "there was never an acceptance of the offer." (See id. at 12:21-22).

---

[2] Defendants' reliance on cases concerning enforcement or setting aside of settlement agreements puts the cart before the horse. (See Doc. 28 at 2 (citing, *inter alia*, Pennsbury Vill. Associates, LLC, 11 A.3d at 914; Rago v. Nace, 460 A.2d 337, 339 (Pa. Super. Ct. 1983))). Those cases do support the proposition for which defendants offer them: Pennsylvania courts will not set aside or refuse to enforce a settlement agreement absent "a clear showing of fraud, duress, or mutual mistake." Pennsbury Vill. Assocs., LLC, 11 A.3d at 914; Rago, 460 A.2d at 339 (same). But before we can determine whether to enforce or set aside a settlement agreement, we must determine whether a valid agreement exists in the first instance.

After the January 2020 phone call, Attorney DeCinti sent Attorney Munley the following email:

> Bob –
> This confirms that we have agreed to settle this matter for $10,000 paid by the [i]nsureds. Attached is the release. You will see that it does not release the liquidated insurance company so you are free to continue to pursue any remedies allowed by the Liquidation. It also specifically preserves your UM/UIM claims. Please let me know if this is acceptable and return it signed so we can get you the check. Call with questions. Thanks Jim

(Doc. 27-2, Ex. B). Attorney DeCinti emailed Attorney Munley three more times—on February 28, 2020, March 26, 2020, and June 2, 2020—inquiring about the status of the release, but Attorney Munley apparently did not reply. (See Doc. 27-2, Exs. D, E, F). During the hearing, Attorney Munley indicated he spoke with Attorney DeCinti on the phone about his difficulty getting in touch with his client, but it is unclear whether those phone calls occurred during the first half of 2020 (when Attorney DeCinti was attempting to confirm settlement) or during the latter half of 2020 (after the parties' disagreement became apparent). (See Hr'g Tr. 8:19-9:4). Attorney Munley offered no explanation for his failure to communicate to Attorney DeCinti (or after the notice of settlement, to the court) that he did not believe the parties had reached a settlement. (See generally Hr'g Tr.) As of the date of the evidentiary hearing, Lee had not signed the release. (See id. at 8:12-13).

The above-described record does not establish an enforceable settlement agreement. Other than the settlement amount itself, neither attorney testified to the essential terms of the agreement or when those terms were purportedly agreed upon. It is not at all clear, for example, if the terms of the release sent to Attorney

7

Munley on February 3 were even discussed during the January phone call—much less whether Attorney Munley agreed to them. To the contrary, it appears from the phrasing of Attorney DeCinti's February 3 email that he was alerting Attorney Munley to the specifics of the release for the first time in that message. (See Doc. 27-2, Ex. B (describing scope of release and asking Attorney Munley to advise "if this is acceptable")). It is prerequisite to enforcement of a settlement agreement that "the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement]." See Mazzella, 739 A.2d at 536 (alteration in original). Without evidence establishing the essential terms of the settlement, or whether those terms were discussed prior to the alleged acceptance, we cannot find an enforceable settlement agreement.

Assuming *arguendo* the release was discussed during the January phone call, a more fundamental problem remains: defendants have not shown that the settlement offer was accepted. Taking Attorney Munley's testimony as true, see Tiernan, 923 F.2d at 1031-32, the record establishes only that an offer was made and that Attorney Munley agreed to relay it to Lee. Attorney Munley expressly denies accepting the offer during the phone call, and Attorney DeCinti conceded there is no written confirmation of acceptance. (See Hr'g Tr. 6:8-16). Even Attorney DeCinti's hearing testimony fails to establish the "unconditional and absolute" acceptance required by the law. See O'Brien v. Nationwide Mut. Ins. Co., 689 A.2d 254, 258-59 (Pa. Super. Ct. 1997) (quoting Thomas A. Armbruster, Inc. v. Barron, 491 A.2d 882, 887 (Pa. Super. Ct. 1985)). Although Attorney DeCinti indicated in prehearing filings that Attorney Munley "agreed to" and "accepted" the $10,000

8

settlement during the phone call, (see Doc. 27 ¶ 12; see also Doc. 18 at 1), his hearing testimony was more equivocal. Attorney DeCinti vaguely described a "discussion" that "led [him] to believe" Lee either had accepted or perhaps "*would* accept" the offer; he did not testify that Attorney Munley actually *accepted* the offer on Lee's behalf. (See Hr'g Tr. 4:13-16 (emphasis added)).

On this record, it is readily apparent there was no meeting of the minds as to the terms of the settlement, nor was there ever an "unconditional and absolute" acceptance of those terms by Lee. See O'Brien, 689 A.2d at 258-59 (quoting Thomas A. Armbruster, Inc., 491 A.2d at 887). We thus conclude there is no enforceable settlement agreement between the parties.[3]

## IV. Conclusion

The court will deny defendants' motion (Doc. 27) to compel settlement. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated: May 3, 2021

---

[3] During the hearing, Attorney DeCinti raised an alternative theory: he suggested Attorney Munley accepted the settlement offer by remaining silent in response to multiple emails purporting to confirm the settlement and inquiring about the status of the release. (See Hr'g Tr. 6:17-7:7). But under Pennsylvania law, "[s]ilence will not constitute acceptance of an offer in the absence of a duty to speak." Solis-Cohen v. Phoenix Mut. Life Ins. Co., 198 A.2d 554, 555 (Pa. 1964) (citations omitted)). Attorney DeCinti identifies no such duty here. We agree with Attorney DeCinti that Attorney Munley's failure to respond—to opposing counsel's emails, to the notice of settlement, and to the court's Rule 41 closure order—reflects a lack of diligence. It does not, however, constitute acceptance of defendants' offer on Lee's behalf.